## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 2, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BENNY SMITH,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0899** (BOR Appeal No. 2051236)
(Claim No. 2015016271)

**ALPHA NATURAL RESOURCES, INC.,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Benny Smith, by Anne L. Wandling, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Alpha Natural Resources, by T. Jonathan Cook, its attorney, filed a timely response.

The issue on appeal is whether Mr. Smith developed carpal tunnel syndrome in the course of and resulting from his employment. The claims administrator denied Mr. Smith's application for carpal tunnel syndrome on March 27, 2015. The Office of Judges affirmed the decision on March 31, 2016. The Board of Review affirmed the Order of the Office of Judges on August 26, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Smith, a former employee of Alpha Natural Resources, retired on September 18, 2012. On May 24, 2013, Mr. Smith underwent a nerve conduction study performed by Milton Calima, M.D., a neurosurgeon. Dr. Calima noted that Mr. Smith was a fifty-eight year old right handed male who was five feet ten inches tall and weighed 179 pounds. He noted that Mr. Smith suffered from gout, arthritis, and gastroesophageal reflux disease. Mr. Smith complained of bilateral hand numbness, burning, and tingling sensations for twelve months. He felt that it was getting worse the past few days. He reported no precipitating event. He just gradually began to

1

notice symptoms and now they were more persistent, especially at night time. He also complained of neck pain without radiation. There was electrophysiological evidence of bilateral median nerve demyelinating neuropathy across the carpal tunnel involving the sensory fibers only and no denervation potentials in the left abductor pollicis brevis muscle, which was consistent with mild bilateral carpal tunnel syndrome. There was also evidence of ulnar neuropathy across the left elbow consistent with left cubital tunnel syndrome and left radial neuropathy in the wrist. There was no evidence of left cervical radiculopathy.

A June 3, 2013, treatment record from Hilltop Primary Care showed that Mr. Smith was seen for his neck and back. After examining Mr. Smith, the doctor listed diagnoses of osteoarthrosis, unspecified whether generalized or localized, involving unspecified site; esophageal reflux; diaphragmatic hernia without mention of obstruction; gangrene; gout; degeneration of lumbar or lumbosacral intervertebral disc; intervertebral disc disorders; and cervicalgia. He recommended a low fat/low cholesterol diet, exercise as tolerated, bilateral wrist splints, Motrin for pain, heat to the back and neck, and follow up in one month. On April 25, 2014, Mr. Smith returned to Hilltop Primary Care. On examination there was bilateral knee pain and tenderness along joint lines with antalgic gait. He still had numbness and discomfort in his bilateral hands with positive carpal tunnel. The physician recommended a low potassium diet, continue medication, heat to knees, bilateral wrist splints at night, and return in two months.

On November 12, 2014, Mr. Smith completed a report of injury alleging injury to his arms and hands due to his job as a foreman/equipment operator for the employer. His date of last exposure was listed as November 18, 2013.[1] Mr. Hatfield, APRN, signed the physician's section of the report. Mr. Smith returned to Hilltop Primary Care on November 18, 2014, and complained of bilateral knee pain as well and numbness and discomfort in both of his hands. On December 16, 2014, another report of injury was completed by Mr. Smith alleging an injury to his back, arms, hands, and knees due to the repetitive stress of equipment operation and driving. Mr. Hatfield completed the physician's portion listing cumulative trauma; repetitive motion occupational injury; and occupational disease to his back, arms, hands, bilateral knees, and neck.

A handwritten questionnaire completed by Mr. Smith on January 2, 2015, listed his work history as equipment operator and mechanic from 1976 through 2012 working for various companies. He does not hunt, sew, knit, craft, perform lawn care, work on motorcycles, play computer games/work, do wood working, or other fine motor activities. He does not have diabetes, thyroid disease, or high blood pressure. On February 9, 2015, Mr. Smith returned to Hilltop Primary Care with complaints of numbness in his bilateral hands with a long term history of carpal tunnel syndrome and cervicalgia. He reported that it interferes with his ability to sleep. On examination he had decreased sensation in his fingertips on both hands and still had numbness and discomfort in both hands with positive carpal tunnel signal. The doctor diagnosed carpal tunnel syndrome and recommended he continue to pursue carpal tunnel syndrome surgery and wear wrist splints at night.

---

[1] Mr. Smith was laid off from employment on September 18, 2012.

On March 13, 2015, Paul Bachwitt, M.D., completed a report at the request of the claims administrator. Dr. Bachwitt was asked to issue an opinion on what, if any, injury should be covered by workers' compensation. He noted that Mr. Smith complains of neck and back pain, numbness in his arms and hands, and pain in both knees. After examination, he diagnosed degenerative changes in the cervical and lumbar spine compatible with age and a right knee sprain. X-rays taken in the office revealed no evidence of arthritic changes in either knee. Dr. Bachwitt saw no evidence of carpal tunnel syndrome and opined that Mr. Smith did not suffer from carpal tunnel syndrome. The claims administrator rejected Mr. Smith's claim for carpal tunnel syndrome on March 27, 2015.

On June 12, 2015, Mr. Smith was deposed. He testified that he first noticed carpal tunnel syndrome symptoms in early 2011. He felt some numbness prior to that when he was an equipment operator. He first sought treatment at Hilltop Primary Clinic with Dr. Hatfield, who sent him to Pikeville Medical. He saw Dr. Calima and underwent a nerve conduction study. He was told that he had carpal tunnel syndrome. When he was working he ran heavy equipment including dozers, rock trucks, graders, loaders, and construction type equipment on a surface mine job. He operated a road grader as well. He noted that he had to use both hands to drive, with one guiding or steering, and the other putting it in motion. He used his right hand to steer and the left for the operation. His hands got worse when he switched jobs from heavy equipment operator to mine foreman. He was driving a pickup for fifteen hours a day as a foreman and doing paperwork. He testified that he has never had any kind of broken bones in his wrist or hands.

Dr. Bachwitt testified in a deposition on July 30, 2015, that that he was made aware of Mr. Smith's nerve conduction study that showed mild bilateral carpal tunnel syndrome. He admitted there was evidence of bilateral median nerve immobilization across the carpal tunnel, which is consistent with mild bilateral carpal tunnel syndrome. He stated that a nerve conduction study is a very helpful test but it is not always correct. He opined that Dr. Calima was incorrect when he made a carpal tunnel syndrome diagnosis. He explained that the Tinel's and Phalen's tests taken with his examination and expertise showed no carpal tunnel syndrome. He stated that Mr. Smith's symptoms and the tests did not follow a pattern compatible with carpal tunnel syndrome. He further opined that his testing did not come close to showing carpal tunnel syndrome. He also stated that the two-point discrimination of each finger is completely normal.

On September 1, 2015, Prasadarao Mukkamala, M.D., examined Mr. Smith and offered an opinion as to whether his carpal tunnel syndrome was work-related. Dr. Mukkamala stated that Mr. Smith's symptoms were not very typical of carpal tunnel syndrome, as Mr. Smith complained of more numbness in the fifth digit compared to the second and third digit in both hands. Dr. Mukkamala stated that these symptoms were suggestive of ulnar neuropathy. He stated the electrodiagnostic test results were not very impressive to diagnose carpal tunnel syndrome, as the test was marginal at best. It was questionable whether Mr. Smith has carpal tunnel syndrome, and Dr. Mukkamala opined that even if he does suffer from carpal tunnel syndrome, it was not caused by his occupational activities. Dr. Mukkamala noted that Mr. Smith stopped working when the mine closed and never missed work due to his hand symptoms. Dr. Mukkamala also noted in his report that since Mr. Smith stopped working, his symptoms have

increased. Dr. Mukkamala concluded that if his work activities caused the carpal tunnel syndrome, then ceasing work should have improved his symptoms rather than increasing them. Dr. Mukkamala further observed that during Mr. Smith's last four years at Alpha Natural Resources he was performing predominantly paperwork and some driving not expected to require the force to cause carpal tunnel syndrome.

Dr. Guberman issued a report on December 1, 2015, regarding Mr. Smith's possible diagnosis of carpal tunnel syndrome. After a record review and examination, Dr. Guberman's impression was bilateral carpal tunnel syndrome due to cumulative trauma at work. It was his opinion that Mr. Smith's work activities were the cause of his bilateral carpal tunnel syndrome. He noted that there are no other contributing factors and no history of diabetes, thyroid disease, or obesity.

The Office of Judges concluded that Mr. Smith did not develop carpal tunnel syndrome in the course of and as a result of his employment in a decision dated March 31, 2016. The Office of Judges noted that it was not clear from the record whether Mr. Smith suffers from carpal tunnel syndrome. Despite a nerve conduction study that would indicate carpal tunnel syndrome, both Drs. Bachwitt and Mukkamala found no clinical evidence of carpal tunnel syndrome. The Office of Judges found that the most persuasive evidence was that Mr. Smith's symptoms did not interfere with his work and increased when he was no longer working. The Office of Judges noted that Mr. Smith ceased working on September 18, 2012, and in his May 24, 2013, report, Dr. Calima noted that Mr. Smith had complaints of bilateral hand numbness, burning, and tingling sensations for twelve months, worsening over the past few days. Although Mr. Smith was treated at Hilltop Primary Care on multiple occasions commencing at least on June 3, 2013, the Office of Judges found that there was no mention of carpal tunnel symptoms until November 18, 2014. Dr. Mukkamala stated that if Mr. Smith's work were the source of his symptoms, it would not be expected for his symptoms to increase when he ceased working. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on August 26, 2016.

After review, we agree with the decision of the Office of Judges as affirmed by the Board of Review. While a diagnostic study showed evidence that Mr. Smith has carpal tunnel syndrome, the preponderance of the evidence supports the decision below that Mr. Smith's condition is not work related. Mr. Smith did not complain of the symptoms of carpal tunnel syndrome until well after he quit working. Furthermore, two physicians of record concluded that his carpal tunnel syndrome was not caused by his work activities. Their opinions are further supported by the fact that Mr. Smith's symptoms have worsened since he has stopped working.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 2, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker